**STATE of North Dakota, Plaintiff and Respondent,**

v.

**Charles REISLER, Defendant and Appellant.**

**Cr. No. 412.**

Supreme Court of North Dakota.

Jan. 7, 1972.

Pearce, Engebretson, Anderson, Schmidt & Thames, Bismarck, for defendant and appellant.

Helgi Johanneson, Atty. Gen., Thomas F. Kelsch, State's Atty., and Dennis A. Schneider, Asst. State's Atty., Bismarck, for plaintiff and respondent.

TEIGEN, Judge.

The defendant was convicted of a "corrupt practice" in violation of Section 16–20–17.2, N.D.C.C., in that he "willfully and unlawfully distributed a political advertisement on behalf of and in opposition to a candidate for public office in the form of a folder or other public means which failed to disclose at the bottom of same the name or names of the sponsors of such advertisement, and the name or names of the person, persons, associations, partnerships or corporations paying for such advertisement." The defendant has appealed and in his appeal makes several claims of error. We find we need consider only one of these claims as it disposes of the case.

The salient portion of Section 16–20–17.2, N.D.C.C., provides:

"Any person * * * who shall * * * distribute, or cause to be * * * distributed, any matter described in section 16–20–17.1 hereof which does not comply with the provisions of section 16–20–17.1, shall upon conviction thereof be punished * * *"

by imprisonment in the county jail or a fine, or both.

The applicable portion of Section 16–20–17.1, N.D.C.C., provides:

"Each and every political advertisement, whether on behalf of or in opposition to any candidate for public office, * * * and whether such advertisement shall be by newspaper, pamphlet or folder, display cards, signs, posters or billboard advertisements, or by any other public means, shall disclose at the bottom of same the name or names of the sponsors of such advertisement, and the name or names of the person, persons, associations, partnerships or corporations paying for such advertisement, except however, this section shall not apply to campaign buttons."

Hereafter we will refer to these sections as the Corrupt Practices Act.

The case was tried to the court. The complainant testified that he had obtained from another source a folder entitled "Did You Know", which was a political advertisement prepared by members of the staff of Congressman Thomas Kleppe, who was at that time seeking election to the office of United States Senator. On September 22, 1970, the complainant went to the "Kleppe For Senator" state headquarters in Bismarck for the purpose of obtaining additional folders. He testified that after he entered the headquarters office he asked a woman in the office for some of the folders, "Did You Know"; that she asked his name and then went into the back office. During her absence, the complainant testified, he took several of the folders, "Did You Know", from a table before the defendant entered the room. When the defendant entered the room, the complainant testified that he restated his request, whereupon the defendant handed to the complainant the folder, "Did You Know", which folder was admitted as an exhibit at the trial.

The only other witness to testify was the defendant. He testified that he did not hand the complainant any document or paper, but when he entered the room he observed that the complainant had, in his hand, several of the folders, "Did You Know".

The trial court found that the defendant handed to the complainant the folder entitled "Did You Know" and that "the handing of the pamphlet to the complaining witness by defendant constitutes a delivery by public means, in violation of statute."

■ The defendant argues that the trial court erred as a matter of law in finding that the defendant "distributed" a political advertisement within the meaning of the Corrupt Practices Act. It is admitted that the folder "Did You Know" is a political advertisement and that it does not contain the disclosure required under Section 16–20–17.1, N.D.C.C. The argument is centered on the meaning of the word "distribute" as used in Section 16–20–17.2, N.D.C.C. The only proof adduced at the trial that the defendant *distributed* one of the folders is the complainant's testimony that the defendant handed to him one of the folders in response to the complainant's request. There is no evidence that this defendant, who was a staff employee, gave or caused to be given these folders to any other person or persons. It is argued that the word "distribute", in this or any other statute dealing with the distribution of advertisements, pamphlets or the like, ordinarily would be taken to mean the giving out to a number of persons. It is suggested that the purpose of the statute is to prevent the dissemination of unidentified and misleading material in so widespread a

manner as to have an effect upon the outcome of an election, and that the word "distribute" is intended to be construed in the normal multiple sense of the word. In short, it is the claim of the defendant that the State has failed, in its proof, to establish a prima facie case. We agree. If we accept the testimony of the complainant, as did the trial court, we find that there is a complete absence of proof that the folders "Did You Know" were distributed by this defendant. The only evidence is that the defendant complied with the request of the complainant and handed to him one of the folders.

Words used in any statute are to be construed in their ordinary sense unless a contrary intention plainly appears. Section 1–02–02, N.D.C.C.

The word "distribute", as defined in the American Heritage Dictionary of English Language, means:

"(1) to divide and dispense in portions; parcel out;

"(2) to deliver or pass out; distributing handbills on the *street*;"

Synonyms given are: divide, dispense, dole, deal and ration.

Webster's Third New International Dictionary defines the word "distribute" as follows:

"1 a: to divide among several or many: deal out: apportion esp. to members of a group or over a period of time: ALLOT * * *

"2 a: * * * to give out or deliver esp. to the members of a group (distributing magazines to subscribers) * * *"

Synonyms given by Webster are: dispense, divide, deal and dole. The dictionary explains that:

"Distribute implies (1) an apportioning of something among many by spreading it into parts, units, or among and assigning each part, etc., to its appropriate person or place * * *"

Black's Law Dictionary, Fourth Edition, defines "distribute":

"In general. The giving out or division among a number, sharing or parceling out, allotting, dispensing, apportioning."

The Massachusetts Supreme Court, in passing on the constitutional validity of a city ordinance which prohibited the distribution of handbills on the city streets, found that the word "distribute", as used in its ordinance, implied "an offering to many people." Commonwealth v. Nichols, 301 Mass. 584, 18 N.E.2d 166, 168 (1938).

In a similar case the California Appellate Court stated:

"It may at times be a close question of fact, whether a person is actually 'distributing' cards, which the Municipal Code prohibits, or whether he is passing out a card or two as an isolated casual or occasional act, which, under a proper interpretation of its provisions, the code does not prohibit." People v. Young, 33 C.A.Supp.2d 747, 85 P.2d 231, 232 (1938).

The *Nichols* and *Young* cases were subsequently reversed by the United States Supreme Court on the ground that the ordinances were unconstitutional restraints on the freedoms of speech and of the press; thus the question of statutory construction was not reached by that court. Schneider v. Irvington, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

The Supreme Court of this state in State ex rel. Shaw v. Thompson, 21 N.D. 426, 131 N.W. 231 (1911), in interpreting a statute which allowed each voter as many votes for the candidates for the office of city commissioner as there were commissioners to be elected, "such votes to be distributed among the candidates as the voter shall see fit," held that the word "distributed" meant to "divide among several or

many," which "would negative cumulative voting, in the sense that it would be inconsistent with concentrating votes upon one."

In Coughlin v. Sullivan, 100 N.J. 42, 126 A. 177 (1924), the Supreme Court of New Jersey held that the handing of a single pamphlet to one person on the street did not violate an ordinance prohibiting the distribution of circulars, pamphlets, etc., in a manner calculated to litter the streets.

■ We construe the word "distribute" in its ordinary and normal sense to mean a distribution or dispensing of the prohibited material to the public generally, or to a considerable number of people, designed to affect the results of an election. The proof adduced in this case does not establish the element of the crime charged that the defendant distributed the unlawful political advertisements and, therefore, the conviction must be reversed.

Judgment of conviction reversed.

ERICKSTAD and KNUDSON, JJ., and CLIFFORD JANSONIUS, District Judge, concur.

■

STRUTZ, C. J., deeming himself disqualified, did not participate; CLIFFORD JANSONIUS, Judge of the Fourth Judicial District, sitting in his stead.

PAULSON, Judge (concurring specially).

I concur in the result of the majority but feel that the opinion should be somewhat more inclusive. It is my view that §§ 16–20–17.1 and 16–20–17.2 of the North Dakota Century Code do not satisfy the constitutional guarantees of due process and freedom of speech and press. My opinion is that the Legislature should be alerted to these constitutional frailties so that these statutes can be revised to conform to the constitutional requirements and thereby carry out the intention of the Legislature. In my opinion, §§ 16–20–17.1 and 16–20–17.2, N.D.C.C., are overbroad in that they prohibit what could be considered as purely innocent acts and are also vague in that these statutes do not clearly indicate who is subject to their sanctions. See State v. Barney, 92 Idaho 581, 448 P.2d 195 (1968).